HEARD NOVEMBER TERM, 1874.

## GARATY & ARMSTRONG *vs.* DuBOSE.

One who holds land under a contract to purchase is not entitled to a homestead exemption therein against an execution creditor—he having no interest which is subject to levy and sale.

It is only where a party owns real estate, subject to levy and sale, that he can claim the homestead exemption allowed by the Constitution.

A bachelor having no persons dependent upon him, and none residing with him except servants and employees, is not the "head of a family" in the sense of the term as used in the constitutional provision with reference to homestead exemption.

BEFORE COOKE, J., AT ABBEVILLE, JANUARY TERM, 1874.

Garaty & Armstrong were judgment creditors of Robert M. DuBose, and this was a rule against L. P. Guffin, Sheriff of the County, to show cause why he should not be attached for a contempt for failing to make and pay over the money on plaintiffs' execution.

. The Sheriff made a return as follows :

" The respondent levied the execution and advertised the following property for sale on salesday of January instant, viz: One tract of land, 810 acres, more or less, bounded by lands of ——— Cade, F. Mitchell, S. S. Martin, and others—one wagon, four mules, two bales of cotton, and a lot of cotton seed.

"On the 20th of December, 1873, a notice was served on me, by

the defendant, R. M. DuBose, claiming homestead and exemption of the articles of personal property advertised, and that the defendant had no such legal interest in the land as that the land could be levied and sold.

"Under this notice and affidavit of the defendant, that he claimed to be 'the head of a family,' and in view of the penalties denounced by the law against Sheriffs who sell property without regard to the claims for homestead and constitutional exemptions, this respondent was advised by his counsel not to sell the said property until the question of exemption was settled.

"The plaintiffs insisted that the defendant was not the head of a family, in the sense of the Act, and, therefore, not entitled to any homestead or exemption, and appealed to this Court, that the defendant, R. M. DuBose, is not entitled to homestead or exemption, upon the following state of facts:

"'The defendant, R. M. DuBose, is not a married man, but he is a householder, having the use, control and occupation of a farm or plantation, in Abbeville County; that he lives in a dwelling house on said tract of land, with furniture, &c., suited to his condition usual in housekeeping; that he had employees and laborers hired, and has carried on farming operations during the year 1873, and was engaged in attending to his business on said farm at the time the execution above named was levied on his property; that he has paid two-thirds of the purchase money of the farm on which he lives, but has not received any deed of conveyance of said farm; that he was never married and has no children of his own in his house.'"

His Honor held that DuBose was the "head of a family," in the sense of the Constitution and homestead laws of the State, and entitled to a homestead, and he discharged the rule.

The plaintiffs in the execution appealed, on the grounds:

1. Because the said Robert M. DuBose is not the head of a family, within the intent and meaning of the Constitution and laws of this State, and is not entitled to homestead and exemption of personal property, under the Constitution and laws.

2. Because the real estate in which homestead is claimed by the said DuBose is not, and never was, his family homestead, it having been bought, in 1870 by him, and the purchase money not having been paid, nor titles thereto received by him.

*Baxter*, for appellants:

Section 32 of Article 2 of the Constitution exempts from attachment, levy or sale, the family homestead of the head of each family residing in this State, and, " to secure the full enjoyment of said homestead exemption to the person entitled thereto, or the head of any family," it exempts, likewise, certain personal property.

This Section imposes the duty on the " General Assembly, at their first session, to enforce its provisions by suitable legislation."

Amongst the needful legislative regulations to this end, it should seem that the designation of the persons to take the homestead was one of the most obvious and indispensable.   The duty to assign the homestead involved the right and necessity of determining what persons constitute the family entitled to demand· and receive the exemption.

The Constitution not having designated those who constitute the family, and not having designated the head of the family, it was competent to the General Assembly to do either or both.

This has been done in language that is explicit and unmistakable, by the following statutes :

Act of 1868, § 4, p. 22, is in the words following : " The estate or right of homestead of the head of any family, existing at his death, shall continue for the benefit of his widow and minor children, and be held and enjoyed by them, until the youngest child is twenty-one years of age, and until the marriage or death of the widow, and be limited to that period.

Section 4 of the Act is as follows : " When a widow or minor children are entitled to an estate, or right of homestead, as provided in the preceding Section, the same may be set off to the parties entitled," &c.   ·

Act of 1869, p. 172–73, directs the Sheriff, in enforcing executions, to proceed in the manner prescribed by Sections 1 and 2 of the Act of 1868, and provides that " should any officer sell any real estate, without complying with Section 1 of said Act, or sell or remove any personal property of the head of any family, whether the head of such family be a freeholder or not, without his or her consent, or first deducting the amount exempted by the Constitution, he shall be deemed guilty of malfeasance in office."

The Act of 1870, p. 380, provides the mode of laying off to the " head of any family " the personal property exempted by the Constitution and Act of 1868.

The Act of 1872, p. 230, in § 4, provides "that the homestead, when assigned as herein prescribed, shall vest in the *heads* of the family, in fee simple," &c.

The words "head" or "heads" of every family are repeated in Sections 5 and 6 of same Act.

Section 8 is in these words: "The widow and minor children of any deceased father or husband shall be entitled to the right of the homestead."

These Acts use the words "father," "husband," as synonymous with "head of the family," and designate the wife and children, and, in the absence of the children, the widow, and, in the absence of the widow, the minor children, as the persons entitled to the exemption, and, of necessity, as composing the family intended by the Constitution.

The plain implication, no less than the express language of these statutes, manifest that the exemption is not a personal privilege of the head of the family, of the father or husband, but is the estate through him, but not from him, of his widow and minor children, one or both.

Statutes exempting a debtor's property from liability for his debts are not remedial, and are not entitled to a peculiarly liberal construction.—*Kere* vs. *Alten*, 5 Denio, 119.

One claiming the exemption of his property from execution must show the facts entitling him to it under the statute.—*Griffin* vs. *Southerland*, 14 Barber, 456.

If, however, misconstruction of the legislative intent, as to the words, "family," "head of a family," if it were possible, the uniform and emphatic language of this Court would preclude all doubt.

*In Re. Kennedy*, 2 S. C., 216, this Court said:

"The exemption is not to the debtor, as such, but as the head of a family. The head of a family is one peculiarly charged with responsibility for the protection of such family. The subject of protection is the family. The head of the family being referred to as its representative, its natural protector."

In this case the family consisted of infant children, and the exemption was allowed them.

In *Bradley* vs. *Rodelsperger*, 3 S. C., Mr. Chief Justice, speaking for the Court, said: "*In Re. Kennedy* we held that the object of the protection afforded by the homestead clause of the Constitution was the family, the head of the family standing as its representative."

"The Constitution has not given any definition of the term family. The term must, therefore, be taken in its ordinary sense. In this sense it is not essential that it should include children."

In this case, and upon this reasoning, the homestead was allowed to a childless widow.

In *Howe* vs. *Howe*, 2 S. C., 229, the Court say: "We have already held, in the case of *Kennedy*, if there was a family and a family homestead existing at the adoption of the Constitution, that instrument immediately acted upon such family, through its proper head, by way of conferring the right of exemption."

"The purport of Section 4 (Act of 1868) is to provide for the continuance of the right in the family of one possessed of such right at the time of his death."

"There is a difficulty in the way of affirming the order, arising from the fact that it does not appear to have been established that the premises have been held by a family as a family homestead, since the provisions of the Constitution have become operative. Nor does it appear that S. C. Howe is the head of any family, so as to authorize the homestead to be laid out to him directly and in name. Assuming that any member of a family has a right to demand, for the benefit of the family, the exemption, still the order for its assignment should conform to the Constitution and the Act, by allowing or establishing such exemption through the head of the family for the time being."

S. C. Howe was a minor, and it did not appear that he was the head of a family.

These judgments and this reason are in harmony with the cases in New York.

In *Woodward* vs. *Murray*, 18 John's Rep., 400, the Court held : That the head of a family is the synonym of father, husband, and describes one who owes maintainance and protection to a wife and children, or to one, or both.

In *Smith* vs. *Brackct*, 36 Barber, 571, it was held that the homestead exemption enures, after the death of the debtor, to his widow and children.

From the judicial determinations, and the legislative enactments on the subject of homestead, the following deductions are the logical results :

1. That the premises, in which homestead is claimed, must have been held by a family, as a family homestead.

2. That the exemption is not the personal privilege of the debtor, or head of a family, but is the estate of the family.

3. That the family consists of wife and minor children, or widow and minor children, or widow, or minor children.

4. That the homestead can be claimed only by the head of a family, or, at least, of a family "for the time being."

5. That neither the character nor the value of the exempt property, under the Constitution and laws, nor the class of persons who are to take the exemption, can be enlarged by judicial construction.

6. That the respondent is not the head of a family, which is the object of the protection, nor have the premises been held by a family as a family homestead.

7. That the order of the Circuit Court must be reversed.

*McGowan & Parker*, contra:

*First.* The defendant, R. M. DuBose, has only an equitable interest in the land, arising from part payment of the purchase money. He has no title to the land, and, therefore, his interest is not the subject of levy and sale under execution.—*Harrison* vs. *Hollis*, 2 N. & McC., 578; *Bauskett* vs. *Holsomback*, 2 Rich., 144–629; *Deen* vs. *Kemp*, 3 Hill, 261; 1 Rich., 373; 8 Rich., 358; 1 McM., 357; Voorhies' Code, 451, and authorites, note 4; Howard's Code, 454; *Brighton* vs. *Bank of Orleans*, 2 Bar., 458; *Griffin* vs. *Spencer*, 6 Hill, 525, and other authorities.

*Second.* But if the mere equity is liable, then the defendant is "the head of a family," in the sense of the Constitution and laws, and is entitled to homestead.

1. Homestead Acts are to be liberally construed.—Voorhies' Code, 457; 25 Wendall, 370; 14 Barb., 457; 19 Wend., 475.

2. The word "family," Article XI, Section 32, of the Constitution, is to be taken in its ordinary sense, and does not necessarily include children.—*Bradley* vs. *Rodelsperger*, 3 S. C., 226.

This case decides that a childless widow is the head of a family. Why not a childless widower? And if a childless widower, why not a bachelor?

3. In New York the word "householder" includes a man without a wife, who kept a house and hired a woman as housekeeper.—*Ensign* vs. *Sherman*, 14 Bar., 439.

The word "householder," as defined by Webster, is synonymous with "head of a family"—"FAMILY," [Celtic, from *famul*, which

means servant,] "the collective body of persons who live in one house, and under one head or manager; a *household,* including parents, children, or *servants,* and, as the case may be, lodgers or boarders." "HOUSEHOLDER," "the master or chief of a family; one who keeps house with his family;" and, for illustration, refers to Matthew, 13th chapter, 27th verse: "So the servants of the householder came and said unto him, Sir, didst not thou sow good seed in thy field? from whence then hath it tares?"

Feb. 26, 1875. The opinion of the Court was delivered by

MOSES, C. J. If the claim to a homestead by the respondent, DuBose, was founded only on his interest in the land of which he is the occupant, it would be enough to say that he does not hold it by any legal title, and only to such does the homestead provision apply. The Constitution (Art. II, Sec. 32,) expressly refers to the real estate of the head of a family, subject to sale " under mesne or final process issued from any Court." It presupposes a title, capable of transfer by such a sale. The respondent here has no legal title to the real estate. He is only in possession under a contract to purchase, and there yet remains due one-third of the purchase money. He has but an equitable interest. It can never ripen into a legal title until the full consideration agreed to be paid has been satisfied. The Constitution, and the several Acts of the Legislature, in their various provisions in regard to the homestead exemption, all look to an interest in the land which can be transferred by a judicial sale. The mere equitable interest which the claimant holds in the real estate, described in the return of the Sheriff, does not entitle him to its benefit.

In the personal property he has an absolute right. If he is the "head of a family," within the contemplation of the homestead law, he may claim its interposition, so far as it extends to such property.

The exemption was intended, not alone as a benefit to the head of the family, but to those whose relations to the head demand, on the one hand, support and protection, and, on the other, require a contribution, by the aid of their labor, to the maintenance and conduct of the general establishment to which they belong. This would naturally be the case between parent and minor children who are in terms embraced within the exemption. It would not follow that, although the head of a family might not be a parent, the one sub-

stituted as the head would lose the favor of the provision, for it would extend to one having under his roof those so connected with him, by ties of residence and association, as to become part and parcel of his household, changing their domicile with him, and having no residence but that which they enjoy under his favor. It is not necessary, to constitue a family, that the relation of parent and child must exist. One of the definitions which Mr. Webster gives of it is, "the collective body of persons who live in one house, and under one head or manager." The respondent here is a single man—no person under the same roof with him, and no one on his premises, save servants and employees. Their continuance with him is but temporary. He may change them from time to time, and they, at their own will, may depart his service. There is absent that peculiar feature, which can be better understood than described, which distinguishes the family even from those who may dwell within the limits of the same curtilage.

The language of the 7th Article of the Constitution of Georgia, in regard to "homestead exemption," is in terms very similar to those of our own. It declares that "each head of a family" is entitled to an exemption of a certain amount, both of real and personal property, against which no judgment of any Court within the State shall be enforced. In *Calhoun* vs. *McLendon*, 2 Geo., 406, the Supreme Court re-affirmed a decision which it had before made, to wit: "That a single man, having no person dependent on him for a support or maintenance, in the meaning of the Constitution, was not the head of a family, and the servants proven to be in his employ in this case does not change the rule."

Statutes exempting property from liability to debts are in derogation of the common law, and not entitled to such a liberal construction as would extend them to those who are not in the spirit or letter of the policy of their enactment. The object of the protection afforded by the Constitution "was the family, the head of it standing as its representative."—*In Re. Kennedy et al.*, 2 S. C., 216; *Bradley* vs. *Rodelsperger*, 3 S. C., 226; *Howe* vs. *Howe*, 2 S. C., ·229.

The motion to reverse the order appealed from is granted.

*Wright*, A. J., and *Willard*, A. J., concurred.